Mr. Helland, right? I'm Mr. Metlitsky. Okay, sorry about that. No problem. Thank you, Your Honor. All right. If I could... Metlitsky, okay, very well. Yes. If I could reserve four minutes. We'll try to help you, but keep your eye on the clock. Will do. May it please the Court. The merits of this appeal, I think, are quite straightforward. That's especially so as to the scope of the speech restriction that the District Court imposed on better... without court preclearance. The plaintiff doesn't even defend, really, that wildly overbroad order. And the District Court's invalidation of two agreements as to parties, that is, prospective class members, who are not even before the Court, was, with respect, entirely without basis. Neither Rule 23 nor any other authority grants District Courts the power to invalidate private agreements of parties not before them. Well, if you want to dive straight into the merits, do you agree that a district judge has the power to block misleading communications to prospective class members? Communications by parties before it, that is, the defendant or the plaintiff or the plaintiff's counsel. Yes, let's go for it. So that's a power the District Court has, correct? Yes, so long as it's narrowly tailored, consistent with the first amendment. That's a different issue, okay. But you're talking about the power to invalidate arguments, or agreements. Right. If the defendant, in essence, has beaten the Court to the punch by making misleading and even coercive communications to class members, securing agreements such as those here, is there any remedy for the misleading communications? Sure. What's that? The remedy, the agreements at the end of the day can be found invalid because they're coerced or whatever it is. It's just that the parties have to be before the Court, right? So in a class action, it would happen once a class is certified. Maybe there would be discussion about it at class certification. Well, I would think that you would be arguing against class certification on the grounds that you have lots of people who've agreed to settle their claims based on the misleading and coercive communications. We would, and so, for example— So why not just cut that short the way the Supreme Court implied, or actually quite clearly indicated in Hoffman-LaRoche, would be possible? So I don't think the Supreme Court implied that parties that are not before the Court can have their private rights adjudicated. I think the Supreme Court, in fact, held the precise opposite in Smith v. Byer. But it did say that communications with people who were not before the Court could be regulated by the Court. The communications that are being regulated are by parties. In that case, it was the plaintiff's counsel. In this case, it would be the defendant. No, it was to—I mean, in Hoffman, it was people who would opt into the suit who hadn't yet opted in. So it was to, essentially, the potential class who was not yet before the Court, and the communications with those parties were regulated, and that was what was upheld in Hoffman. Right, but I believe that the communications were by parties that were before the Court. And in any event, all we're talking about is communications. We're not talking about the invalidation of private agreements. Right, but I'm saying it seems to me there needs to be a distinction between adjudicating the rights of the nonparties and the Court's actions in regulating your clients' communications with the nonparties, which seems clearly covered, at least in terms of some authority, by Hoffman. Absolutely. The Court, and by Gulf Oil, the Court can regulate communications. There's a separate question about whether the regulation was an abuse of discretion, but there's authority for sure. I'm concerned about the jurisdictional issue. Yes, I was getting there next. Because, you know, when I read your brief, the theory makes sense. I mean, you have the order, and then you move for reconsideration, and then it's denied, and then you appeal within 30 days. That fits the rules. The problem is that the document that is said to be a motion for reconsideration doesn't use the word reconsider. One says nothing of the sort, doesn't look like a reconsideration, doesn't say I'm a reconsideration motion, I'm stopping the clock. That's right. So that seems to me that the, how did it stop the clock? Well, so there are several doctrines, not just the Rule 59e doctrine, but I'll answer your question directly. The reason the brief looked like that is because that is the brief that the district court requested. It requested a joint brief with statements by each party. I mean, you represent your client. You can file another piece of paper, and you can say I also want to ask for reconsideration. There's mistakes in this order that are big, and you need to fix this before I'm going to go upstairs. I suppose you could, but that would just be sort of burying the district court in paper, and I think the doctrine from this court is that the motion doesn't need to be styled a motion for reconsideration. It doesn't need to invoke local rule or Rule 59e. The question is what the relief you're asking for is. With respect, I have grave concerns about the jurisdictional issue, and in addition to what my colleague said, I don't see how you get around Local Rule 7-18. You don't comply with any portion of that, and that's what you've got to comply with in order to have a motion for reconsideration, however styled. So what's your best argument that you can treat what you want us to consider a motion for reconsideration when you didn't comply with Local Rule 7-18? Well, Your Honor, so one of our arguments is that there are other bases for jurisdiction other than the motion for reconsideration. Well, you want to go with the induction. I think that's a much more difficult issue. No, there's a doctrine called, referred to it as the resolving of genuine ambiguities doctrine, which doesn't depend on any motion at all. The question is just whether the second order resolves a genuine ambiguity in the first order. So do you want us to construe your argument on the basis that this was a motion for reconsideration, which would be subject to Local Rule 7-18, or are you going to go on the ambiguity argument? We just have alternative arguments. We have three different alternative arguments for why the first order comes up. What's your best argument? I think the easiest to understand argument, and I think the one that fits the… We can take whatever you want to give us. So resolution of genuine ambiguities is actually what happened here. That is just like, as a matter of fact, what happened. And doing that, you avoid any other rules, basically? Well, you're not avoiding rules. The question is just whether you have to appeal the first order if instead of appealing the first order… I'm talking about any jurisdiction at all. Oh, okay. I have grave doubts that you have any jurisdiction at all, and I want to know how you get around Local Rule 7-18. So I don't think Local Rule 7-18 has anything to do with this, because the question is whether the relief that you're seeking is under the Rule 59E doctrine. The question is whether, first of all, the motion that you're saying was a motion for reconsideration is timely under Rule 59, which is 28 days, and the second is just what relief you were asking for. And under the Local Rule, you've got to satisfy certain three prongs to show that it was, in fact, a motion for reconsideration. So how are you to style it? Your Honor, I don't think so. I don't think that's right, because the doctrine doesn't turn on how the motion was styled. The doctrine just turns on… I understand that. How are you to style it? We'll call it a pig's foot. Yeah. Nonetheless, you've got to comply with Rule 7-18, and no part of it does. So, Your Honor, our position is you don't have to comply with the Local Rule, because the question is just whether you're asking for alteration or amendment of the judgment under Rule 59, not whether it's a motion for reconsideration. But you can disagree with me about that. If you call it a motion for reconsideration, you do have to comply with Rule 7-18. If you call it a pig's foot, you don't have to. Well, you have to comply with the Local Rule if you're filing a motion for reconsideration. But we're not to… But that's what you're calling it, right? No, but what we care about, all we care about here is whether the first, assuming that there is appellate jurisdiction over either of the orders, which I'll get to in a second, assume that there's appellate jurisdiction. The question is, does only the second order come up on appeal, or does the first order come up too? But with respect, counsel, you're a good lawyer, and I appreciate the back and forth here, but you're jumping ahead. I don't see you getting here in the first place. You need to help me get there. I don't see how you're doing that by making the argument that you're making. How do you get here? Your Honor, let's say you just disagree with me about Rule 7.3, and I'm just wrong about that. So forget about Rule 59, Rule 7.3. There's an entirely separate doctrine. United States against Doe from this Court, 374 F. 3rd at 854 is an example, where if the question is, if you timely appeal a second order, does the first order come up, the answer is yes, if the second order resolves a genuine ambiguity in the first order. And that is clearly what happened here, certainly as to this. The second order was filed within 38 days. Therefore, you relate back and everything is still there. So the first one comes up. And the theory of that doctrine that the first order is sort of not sufficiently final until it's clarified by the second order? I think that's part of the theory of the doctrine. The other part of the theory of the doctrine, I think, is if a first order is not clear, then the right person to clarify it in the first instance is the district court. And the last thing you want is protective appeals being filed, not only because it starts the machinery of the court and, you know, keeps the clerk's office busy for no reason, but also because once a notice of appeal is filed, there's a question about whether the district court retains jurisdiction over the action. To clarify. Right? So if the district court is all of a sudden deprived of jurisdiction, the district court can't clarify a genuine ambiguity. So why on earth would you want to force the party to appeal in the first instance when they could just wait for the district court to clarify and then appeal in the second instance? And then importantly, as that case that I cite makes clear, U.S. against Doe, there just has to be an ambiguity as to one part of the order. Right? If there's an ambiguity as to any part of the order and the second order clarifies that part of that ambiguity, then whatever is appealable, and I'll get to appellate jurisdiction in a second, setting aside timing. While you're making this argument, let's assume that the clarification took place three years later. Yeah. Does that relate back? Does that give you jurisdiction? Yeah, I believe there's a court from this case that was, I don't know, about three years, 10 months, something like that. But here, it was very fast. So I don't think you have to resolve that issue. I think the question is just whether the second order clarifies a genuine ambiguity in the first order. So basically, you're not going on, it's like an injunction, you're not going collateral. No, so I think, let me just take a step back. As to this court's jurisdiction, there are two separate issues. One is an issue of timing. Right. And that issue of timing, assume that there's appellate jurisdiction otherwise. The question is whether the first order comes up with the second order. So you, in order to have the original jurisdictional issue resolved, before you get to the ambiguity question, you do have to go with a collateral order or an injunction. Yes, so right. So then there's, just forget about any timing issue. Just assume everything was obviously timely, there was just one order. Now there's a question of whether there's appellate jurisdiction despite the interlocutory nature of the order. And so our first argument there is that just as Judge Stepar just held in the Fox case, the speech restriction, which prevents my party from talking to its employees, is a collateral order. And the invalidation, and so there's appellate jurisdiction over that, just as a final judgment under Rule 1291. And there's pendent appellate jurisdiction over the invalidation of the agreements because they turned on exactly the same analysis. So the issues are inextricably intertwined. And our second argument there is that if you think that there's no appellate jurisdiction over the invalidation of the agreements, this seems to me like a perfect opportunity for the exercise of the court's supervisory mandamus authority because there is district courts all over the circuit are invalidating agreements between parties. What have you said about the time for bringing a mandamus petition? There is no time for... We said that there's presumptively a particular timeframe that it has to be brought within from the date of an order. I'm not sure that the court has said anything. I think it's usually within a reasonable time, something like that. But if you sort of overlay the timing doctrines that I was discussing earlier, you know, why would you want somebody to come to this court based on an unclear, ambiguous order when the court could clarify first? I think the same principles would apply, and I think they'd apply a fortiori to mandamus petitions because there isn't a specific timeframe for mandamus petitions. Do you want to save any of your time? Yes. I know time flies. Yes, please. I would love to save as much as you give me, Your Honor. All right. Very well. Okay. Let's hear then from your Mr. Is it Hetland or Holland? Which is it? Helen. Helen. I've got it all wrong. So Helen it is. Please proceed. Thank you, Your Honor. And may it please the court. Matthew Helen for the plaintiff appellee. With me at counsel table is my co-counsel, Andy Head. We're here on interlocutory appeal of two case management orders. After defendants' early suit gamesmanship forced the district court to wade through volumes of evidence to issue case management orders that were completely Well, the order invalidating agreements, and it just decides that on the merits that these agreements are invalid and unenforceable of non-parties before the court can hardly be described as a case management order. Well, Your Honor. It's not just a procedural thing. The substantive rights of people who are not before the court and no procedural device was invoked to bring their claims before the court in a representational capacity have now been adjudicated. How did that happen? It happened because the district court saw what defendant was doing behind the scenes to try to take the case management authority and the orderly prosecution of the case out of the district court's hands and wipe out the case before the case even started. But that might have justified very aggressive orders, regulating communications, sending notices to the parties, bringing them before the court, and then once that was done, resolving substantive issues about their rights. But just issuing an order that just strikes agreements and then isn't even clear about whose agreements are being stricken, and then that has to be clarified. Oh, yeah, I meant it to go nationwide. It's extraordinary to have this kind of reach with no formal procedural device to bring parties before the court. Well, I have a few things to say in response, Your Honor. First, I would like to talk about jurisdiction, but we can get to that after I respond to the question. The orders are narrowly tailored and confined to the claims that are at issue in the case, and they are further narrowly tailored and confined that they only relate to agreements that were signed by employees who are current at the time of hire, and they don't apply to employees who are new hires at that time. And so the reason these orders are appropriate within the court's case management authority is that they only relate to the adjudication of the claims that are in the court. So if any of these employees go and have an FMLA claim and file suit, then that court would determine whether the release was valid for the purposes of that claim and that separate suit. What is your response to my colleague's question about the extent of these orders and people who are not before the court? Two things to say in response. First, Rule 23d and the FLSA both authorize the court to manage communications to potential members of the class under Rule 23 and to the FLSA collective under Hoffman-LaRoche. So the court has the authority to manage the communications. If a court has the authority to manage communications, that must go hand-in-glove with the authority to invalidate agreements that arise from improperly coercive. Did the court order take away rights of anyone who was not before the court? The court did not take away rights of anyone who was not before the court because the members of the putative class and collective did not lose any rights. They retained their rights that they would have had without the improper communication. Even those who signed the settlement agreement? That's correct. The settlement agreements that were declared invalidated? That's correct. Finally, they kept the money, and as I understand it, the district judge was saying we'll deal with money later. That's correct. If people want to pursue those claims, they may. But the only party whose rights were lost by these orders, as I understand them, was the defendants. That's correct, Your Honor. And the defendant, of course, had every opportunity to present all of their arguments. Were the substantive rights of non-parties, people not before the court, adjudicated on the merits by the court? They were not. The invalidation of the agreements did not alter their rights with respect to the defendant? It did not because the only right that the members of the putative class and collective obtained as a result of those agreements was the right to $5,000. And the court said we are not going to require that you return that $5,000 right now. We'll decide what to do with that. It might be an offset. And so with respect to the putative class and collective members, they were just they didn't lose anything. No, but I understand they didn't lose anything, but they were granted relief. They were relieved of their obligations under those agreements, were they not? For the purposes of the case, yes. The court said that the claims that you have given up will remain live for the purposes of this case. And what precedent is there for making that kind of substantive adjudication with respect to a non-party when there's no representational device invoked by the court to bring those rights before it? It flows, Your Honor, from Rule 23D from Gulf Oil. And the fact that a district court has the right to regulate communications. I agree you have plenty of authority to regulate communications. And you've raised really serious concerns on the merits. I mean, I'm not questioning that. But it seems that the district court just got ahead of itself. Before you can start adjudicating substantive rights of people not before the court, some procedural device, and there's a whole bunch of tools in the box, one of them has to be picked up to do that. And none of them were picked up that I can tell, unless I'm overlooking something. Was some device invoked representationally to bring them before the court to have their rights under these agreements decided on the merits? Well, there are devices that could have been invoked, including the notice to the group under Hoffman-LaRoche to the FLSA. And the court issued curative notice to identify this issue for members of the collective. What do you mean by that? The district court ordered that a notice would go out to all members of this group informing them that these agreements. After the decision? Correct. Okay, so it wasn't prior to. So they didn't have an opportunity to participate in the decision before the court decided. Correct. And one of the reasons that the district court had to handle it in this way is because at the same time we filed our motion to invalidate the agreements, the defendant filed a motion to deny class certification based on the existence of the agreements. And that goes to a point that was raised during my friend's argument. The court denied that motion. The court did deny that motion. And so it was by defendant's choice to trigger this issue in front of the court. We rolled out these agreements. We think this kills the entire class. We would like the court to say now that these agreements kill the entire class. So defendant raised that issue and put it for the court's determination because the court had to decide what to do with these agreements. And was there anyone else there to represent virtually the interests of these folks other than the folks who were seeking class certification? There was not. They are not represented by counsel, which, in fact, is one of the problems, we think, with this device. But you were seeking to represent them, right? We were. So that's part of your job as putative class counsel. Correct, Your Honor. But was a class certification motion ever filed? It was not because now we're here on appeal. And so that will be one of the next steps when we go down. Let me clarify. A class certification motion on Rule 23 was never filed. We did file a motion for conditional certification and judicial notice of the nationwide FLSA collective. The district court granted that motion. And so while we've been on appeal, judicial notice of the case has gone out to the entire nationwide FLSA collective. Hundreds of members of the putative collective have opted in, in part because the notice informed them that the communications were improper and wrong. So now we're at a spot where we do have hundreds of plaintiffs who are our clients and who are members of the collective. And they are before the district court now, and that litigation will continue once we return from appeal. So I would... Is there anything in the record to suggest the size of the putative class? I don't think there's anything in the record that suggests the size. So I'd like to address some of the jurisdictional arguments. We think they are grave concerns as well, and we think that the court should not even reach the merits. There are two key aspects of the district court order that are important for the jurisdictional issues. The first is the forward-looking restriction on speech, and then the second is the backward-looking invalidation of the agreements. The forward-looking speech issue is the jurisdictional hook. That came up in the July issue. But we are really here because of the invalidation of the agreements. And that's because while speech is, of course, very important, conditions in the mortgage industry are such that the defendant has laid off almost its entire workforce. There are hardly any underwriters left for the defendant to talk to. And so this appeal is still going on because of defendant's desire to wipe out the class and seek enforcement of all of the agreements. Let me be sure I understand your position. Are you saying that the forward-looking speech issues per se give our court Article III jurisdiction to hear this case? We don't think so, Your Honor, because we think that the July 21st order is not a new injunction. It's not a new restriction on speech. Okay, so you're going back to that, right? That's the timing point, though. That's the timing point. But in general, do you agree that a district court's order restricting such communications going forward, let's suppose it's crisp, clear, unambiguous from the get-go, that that's appealable? Yes, Your Honor. Under what theory? The collateral order doctrine and that it's an injunction restricting speech. Okay. So then you've got the timing issue with respect to the communication question. And then the separate question about whether that if we've got that jurisdiction, it also brings up the invalidation order. That's correct. Okay. And that's the piece where I think it's very important that the court define the limits of its jurisdiction and under what theory, if it's accepting jurisdiction, that that jurisdiction exists. Because the May order doesn't automatically just come in. Let me ask you this. You've heard the questions I asked your friend, and I use that term in the litigation context. The professional sense. Right. You've got a situation here where you're talking about collateral orders and whether it's like an injunction, but both of them have little problems. And one of them I raised with your colleague is one of those requires that you call this what he did, a motion for reconsideration. You know the local rule wasn't complied with. What's your response to that? What does that do to the collateral order, if you will, avenue to our jurisdiction? Well, that issue would focus mostly on the May order. And so we're talking about whether the May order gets roped in with the July order. We only get there if there's jurisdiction over the July order, which we don't think that there is. But, again, so we're dealing with whether the invalidation of the agreements comes up and whether this court has jurisdiction over the invalidation of the agreements, which is only in the May order. And so on the motion that was not made for reconsideration, we think that is a very important point. The reason their local rule is in existence for the requirements for a motion for reconsideration is so that the court knows it's a motion for reconsideration and so that the opposing party knows that it's a motion for reconsideration. Isn't that really, though, a matter for the appellate court to govern rather than and for the federal rules of appellate procedure rather than a local rule to restrict access to the Court of Appeals? It only becomes an issue because of the jurisdictional issue, because it did not do anything to revive the expired time clock on the May order, and that's why. Well, I guess let me try to be more specific. Can a local district court adopt rules that would have the effect of restricting access to the appellate court in terms of what is recognized as a Rule 59e motion? I don't think so, Your Honor. Neither do I. But I think the line of questioning gets to the point that it wasn't a motion at all. It wasn't a motion to reconsider. It wasn't any sort of motion. It was just follow-up briefing. But the problem, I guess the problem I have is that the May order with respect to speech doesn't seem final at all since the judge directed the parties to go figure out what was going to be said, right? That's correct, Your Honor, with respect to the curative notice. Right. So, in essence, what you've got is an incomplete order in May with respect to speech going forward as well as this notice problem, right? Maybe with respect to speech going forward. The theory of jurisdiction that you're arguing would seem to push a party in the defendant's position towards filing one, two, or perhaps, well, two, maybe even three different notices of appeal to try to protect itself. Well, we don't think so, Your Honor. And the Fox case from the Sixth Circuit found that a similar order was final even though the details had to be. But what Fox said is that the reason why it was final is that the stuff left over was ministerial in terms of the notice. The one thing that's clear, I agree, it's not labeled a reconsideration motion, but, boy, there was a lot in that brief that's not ministerial. So that seems to distinguish it from Fox. And I'm blinking, and so I'd like to make one last point, if I may, in response to that. All of that related to the speech. None of that related to whether the agreements were invalidated. That issue was signed, sealed, and delivered and locked in in the May order, and defendant chose not to appeal. I thought I heard you say that you thought we didn't have jurisdiction over the second order, even though that is clearly within the 30 days. Why don't you think we have jurisdiction over that? Because no new restriction on speech was announced. In our view, that was just a clarification of the May order. There is no new, fresh injunction. Okay. In terms of my colleagues, do either have additional questions for counsel? No. Very well. Thank you very much. Thank you. All right. Mr. Fiske? Yes, thank you, Your Honor. Let me just start right where we left off, whether there's jurisdiction over the scope of the speech restriction, because the notice of appeal as to that second order was clearly timely. Here's what the district court said about whether that scope of the speech restriction was new. This was from the grant of a stay on August 16th. The district court stayed the order relating to a request by defendants that was not addressed in the May 17th, 2022 order, namely that defendants have permission to discuss wage and hour matters, as opposed to the lawsuit specifically with members of the potential class. So at the very least. Which of the order are you reading from? This is the August 16th order. It is right at the beginning of the excerpts of record. 6, ER 6. So at least as to the scope, there is appellate jurisdiction, there is no timing issue, and so at the very least the court should narrow the scope of the injunction, limit it to the litigation and not that you just can't talk to employees about their wages. Second, as to the power of the court to invalidate the agreements, its managing communications, which we agree the court has authority to do, does not imply the right to invalidate the substantive rights and agreements of parties who are not before the court. There is just no basis for that. And so, you know, that's our argument. I don't really have anything else. Excuse me, but is it correct that the new employment agreements, in essence, they had the new arbitration provision, correct? Right. That was not flagged at all in the communications before folks signed those, correct? That is not. It wasn't highlighted in the meeting, and no indication that it was going to be affecting the pending case. So that's not right as to everybody. It was flagged specifically. So those agreements were sent out at like 6.30 p.m. on October 19th. At 9.30 a.m. there was a follow-up email, a recap email, and that's at ER 139, and it says it flags the arbitration provision and it says the arbitration provision, which could also limit what claims you join as part of this lawsuit. So certainly it's not clear as to the class. Not the initial communication. You're saying you clarified it later after, what, 100-some-odd folks had already signed it, right? But not all of them. So that's the whole point, Your Honor. So this sounds to me, frankly, Counsel, like a very clever strategy to basically disrupt a collective and class action here. Your Honor. And the question is how tolerant the courts are going to be of that. Right. So we disagree, you know, fundamentally with that. We think that this was, you know, the settlement agreements were just totally ordinary settlement agreements for substantial consideration, and the arbitration agreements. How does this compare to the stakes in individual cases? I'm not sure what an individual. You surely don't think you were paying 50 cents on the dollar, did you? I honestly, I have no idea. No idea. And no way for those employees to know either, correct? Well, no, that's not true. Your Honor, this is just, we're not allowed to settle cases? I mean, we told the employees. You've got an exploding offer, five days, a message that says don't communicate, share this message with anyone, right? No, Your Honor, there was, that settlement agreement identified the plaintiff's counsel. It did, but you also were telling your employees don't share the messages with anybody. Don't share the agreement. The messages. I guess it was the emails. Well, I'm talking about just the generally oppressive power that an employer can have over potential, over its current employees in this kind of a situation where you have that kind of an exploding deadline. It seems to me the district judge was perfectly, her approach here was perfectly understandable. Whether we've got jurisdiction and whether there are appropriate limits, we'll talk about that. Well, so, I don't have a lot of time. I fundamentally disagree. You don't have any time, but my colleague can ask additional questions. Oh, yeah, that's true. Do you have additional questions? If I'm throwing those challenges at you, then I'd be interested in your response. On the merits, again, the release, the settlement agreement was just a settlement agreement. It was for substantial authority, and it was clear that it was voluntary. They were told it was voluntary over and over. The arbitration agreements, the law in California is totally clear that, and this court in Chamber of Commerce against Bonta made clear just recently, that employers of at-will employees can roll out new employment agreements that include arbitration agreements, that include class waivers, and that is all that happened here. Except that it was going to be applying to a pending dispute that was before the court. Sure, but large companies get sued all the time. They have tons of lawsuits against them all the time, and I don't know of any doctrine that says there's a general rule in California that you could roll out new employment agreements with arbitration agreements unless you're being sued. I've just never heard of that rule, right? And so we think that the committee, and by the way, one of the things that the district court thought was a problem here was that the employment agreements were only sent out to underwriters. But that is true on that day, but it is totally clear from the record, all over the record, that the employment agreements were going to be sent out to all U.S. employees, not just the underwriters. This was just a new employment agreement that was going out to everybody. But even if you think that those communications were coercive, whatever the district court thought they were, the answer, the remedy before a class is certified is to regulate communications. It can't possibly be to invalidate the substantive agreements that these parties have entered into. Once there is a class, or once there is a party at least, a named plaintiff that has an arbitration agreement or has a settlement agreement, which is not true of the plaintiff here, the district court can consider a motion to compel. They can consider the validity of the agreement, but not before they are parties to the court. They're strangers to the litigation. Let me ask, do you have any additional questions? How about you? One more. Go ahead. And that is whether you all have ever asked the district judge to approve any particular communications to employees. No, because that order has been staked. Okay. Thank you. Thank you both, counsel, for your argument. A very interesting case. It involves some precedent-setting issues in our court. Thank you all. The case just argued is submitted.
judges: SMITH, Hamilton, COLLINS